UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHERRY JEAN BATISTA,

    Plaintiff,

v.   Case No: 5:21-cv-363-TJC-PRL

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her claim for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be affirmed.

### I.   BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> Plaintiff appeals from the Commissioner's denial of her claim for Disability Insurance Benefits, which was protectively filed on August 3, 2018 (Tr. 17, 106, 108, 120, 122). An administrative hearing was held on September 24, 2019, and a supplemental hearing was held on September 16, 2020 (Tr. 43-65, 66-105). The ALJ subsequently issued an unfavorable decision on September 25, 2020 (Tr. 17-33). Now that the Appeals Council denied Plaintiff's request for review (Tr. 1-3), this Court has jurisdiction

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

>to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

(Doc. 17 at 2).[2]

At the time of her alleged onset date, Plaintiff was 46 years old. (Tr. 73, 107). Plaintiff obtained her GED and has past relevant work experience as a contact lens dispensing optician (Tr. 100, 412). Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: obesity, asthma, lumbar spine degenerative disc disease with radiculopathy status-post surgery, lupus, cervical spine degenerative disc disease, degenerative changes to the thoracic spine, and limited visual acuity bilaterally. (Tr. 20).

The ALJ found that the Plaintiff had the residual functional capacity perform light work with some limitations. The ALJ found that Plaintiff required the following limitations:

>she requires a sit/stand option, allowing her to shift from either sitting or standing at intervals of approximately 30 minutes, provided she does not leave the workstation and the shifting of positions results in her being off-task no more than 1-2 minutes with each position shift; she is incapable of climbing ladders, ropes, and scaffolds and is incapable of kneeling or crawling; she is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, and crouching; she is capable of frequent rotation, flexion, and/or extension of the neck in all directions; she is incapable of reaching overhead or below knee level but is otherwise capable of frequently reaching in all directions with the bilateral upper extremities; she is capable of no more than occasional exposure to extreme temperatures, humidity or wetness, vibrations, poorly ventilated areas, and pulmonary irritants, including noxious odors, fumes, dusts, and gases; she is incapable of working in an environment with bright lights, such as direct sunlight, stage lighting, or stadium lighting, and she is incapable of working in an environment with flashing

---

[2] For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, the new rules apply to Plaintiff's claim.

> lights, such as strobe lighting; she has limited visual acuity but is able to distinguish between items such as nuts, bolts, and screws of 1 inch or greater, read ordinary newspaper or book print, and identify and avoid normal workplace hazards such as moving forklifts, belts, and chains; she is incapable of working at unprotected heights or with moving mechanical parts; she is incapable of operating a motor vehicle for work; and she would be off task up to 10% of the workday in addition to regularly scheduled breaks due to medication side effects and the combined effects of her impairments, including the sit/stand option.

(Tr. 24).

Based upon the RFC and considering the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could perform, such as the jobs of router, collator operator, and photocopy machine operator. (Tr. 32). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 32).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

Plaintiff raises multiple issues on appeal as follows: (1) whether the ALJ made internally inconsistent factual findings and stated with clarity the rule being applied; (2) whether the ALJ's hypothetical question to the vocational expert included all of Plaintiff's impairments; (3) whether the ALJ properly evaluated each impairment and the combined effect of the impairments; and (4) whether the ALJ properly evaluated Plaintiff's testimony and statements regarding her subjective complaints. In light of the arguments raised by

Plaintiff, the Court will first consider whether the ALJ's decision is based on substantial evidence.

### A. WHETHER THE ALJ'S DECISION IS BASED ON SUBSTANTIAL EVIDENCE

Upon careful review of the record, the undersigned finds that the ALJ's decision, including the RFC determination, was based on substantial evidence. The ALJ considered the entire record, including Plaintiff's symptoms and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p. (Tr. 24). The ALJ also considered the medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c. (Tr. 24).

As a preliminary matter, there is no dispute that Plaintiff's claim is subject to a new regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration has issued new revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions."). In this case, Plaintiff filed her applications in 2018, thus the new rules apply to her claim.

The new regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical

opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a)(2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

In this case, Plaintiff alleged disability due to several back impairments (including lumbago, lumbar canal stenosis, lumbar radiculopathy, congenital spinal anomaly spondylolisthesis, and status-post laminectomy syndrome), chronic pain syndrome, lupus, loss of right eye vision and limited left eye vision. (Tr. 25). The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, the "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25). As part of the analysis, the ALJ explicitly stated that he considered the record as a whole, and assessed the limiting effects of her alleged symptoms considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication for the relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve the pain or other symptom; and (7) and any other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. (Tr. 25).

The ALJ considered the objective medical evidence, including evidence related to Plaintiff's back impairments. The ALJ determined that while the objective medical evidence supported the assertion that Plaintiff's impairments limited Plaintiff's ability to work, the evidence did not support the contention that her impairments prevented her from working entirely. (Tr. 26). In making that determination, the ALJ expressly considered records related to and following Plaintiff's lumbar laminectomy due to spondylolisthesis, including that Plaintiff reported 60% or more relief from chronic pain from medication and reported improved physical functioning (Tr. 26, 722). In November 2018, Plaintiff had a normal gait, normal range of motion, no limb or joint pain, and full muscle strength. (Tr. 26, 828).

As the ALJ observed, Plaintiff's condition appeared to improve in 2019. In February 2019, Plaintiff also had a normal gait, normal range of motion, and normal strength. (Tr. 26, 862). During visits in 2019, Plaintiff had a slowed gait and decreased range of motion but exhibited a normal range of motion and normal strength a few months later. (Tr. 26, 900, 930-31). Also in December 2019, Plaintiff reported to Dr. Hashim that about 70-90% of her pain was alleviated with medication, and that her pain relief medications made "a real difference for her." (Tr. 984). In 2020, Plaintiff reported some pain, stiffness and swelling, but also exhibited full muscle strength on multiple occasions. (Tr. 1080, 1088). The ALJ also noted that Dr. Hashim's treatment notes frequently reflected that Plaintiff reported 70-80% of pain relief. (Tr. 988, 984, 992, 1073, 1082). In June 2020, Plaintiff reported to Dr. Hashim that she was receiving pain relief from her medications, that she was improved in her family relationships, social relationships, mood, sleep patterns and overall function. (Tr. 1082). Plaintiff also reported that swimming alleviated her symptoms. (Tr. 1073).

Regarding Plaintiff's vision, the ALJ considered records including that Plaintiff denied vision loss in October 2018 (Tr. 27, 699, 859). In November 2018 and November 2019, Plaintiff also denied vision loss. (Tr. 27, 855, 916, 988). In July 2020, Plaintiff denied having blind spots, blurriness, double vision, pain from bright lights, visual changes, or visual disturbances. (Tr. 27, 1074). The ALJ also relied upon the consultative examination of Dr. Christopher, which the ALJ found somewhat persuasive. (Tr. 28). Dr. Christopher examined Plaintiff in October 2018, and Plaintiff reported blurred vision and glare in both eyes. (Tr. 802). Dr. Christopher reported Plaintiff's best corrected vision of 20/80, but noted that he did not believe Plaintiff put forth her best efforts. (Tr. 28, 803). The ALJ determined that Dr. Christopher's opinion was generally consistent with the treatment records showing some visual limitations and with Plaintiff often denying vision problems. (Tr. 28). The ALJ's RFC finding was based on all this record evidence, as well as the treatment history and medical evidence of Plaintiff's alleged vision impairment. (Tr. 28, 704, 748, 853, 1075).

As to asthma and lupus, the ALJ noted that Plaintiff's asthma was managed with the use of her inhaler without complaints. (Tr. 27, 973). In May 2020, Plaintiff continued her medication and inhaler use without any complaints regarding her asthma. (Tr. 27, 1054). In September 2018, medical records reflect that Plaintiff's lupus was simply noted, and the same was true in May 2020. (Tr. 27, 700, 1061).

Further, the ALJ relied on the findings of administrative medical consultants Dr. Ira Frelich and Dr. Krishnamurthy and found their opinions to be somewhat persuasive. (Tr. 30). Though not identical, the opinions of both doctors are similar. Both doctors determined Plaintiff could perform light work with various limitations. (Tr. 115-17, 129-132).

As Defendant notes, the ALJ ultimately included more limitations than those set forth by the administrative consultants. (Doc. 17 at 11). Specifically, in express consideration of Plaintiff's occasional gait abnormalities and pain with range of motion, the ALJ found Plaintiff requires a sit-stand option permitting her to shift positions every 30 minutes. (Tr. 30). The ALJ also included limitations on kneeling, crawling, climbing ladders, ropes and scaffolds in consideration of her back impairment and chronic pain syndrome. (Tr. 30). Likewise, the ALJ included limitations from reaching overhead or below knee level, as well as various environmental limitations in consideration of Plaintiff's pain, back impairments, lupus, asthma and vision issues. (Tr. 30).

Upon a careful review of the evidence in the record, it is apparent that the ALJ expressly considered evidence including objective medical evidence, treatment records, Plaintiff's overall treatment protocols, medication use, activities of daily living, and the findings of the administrative consultants in determining the RFC. All this evidence constitutes substantial evidence upon which the ALJ could properly rely. Accordingly, the undersigned finds that the ALJ's decision and the RFC finding is supported by substantial evidence and is due to be affirmed.

    **B.**  **PLAINTIFF'S CAPACITY TO DO LIGHT WORK**

The first argument raised by Plaintiff on appeal is that the ALJ's conclusion that Plaintiff was capable of light work "is not based on reasonable and consistently applied standards and is not supported by substantial evidence." (Doc. 16 at 7). Plaintiff contends that the ALJ's decision is flawed in at least two respects.

First, Plaintiff argues that the ALJ provided no rationale to support the finding that Plaintiff retains the capacity for light work but cannot perform her past relevant work as a

contact lens dispensing optician, which was sedentary as performed. (Doc. 16 at 4). Plaintiff argues that the ALJ's RFC did not include any restrictions related to fine dexterity or the ability to sit for prolonged periods or other physical restrictions that would preclude sedentary work. Plaintiff also points out that the ALJ did not make any determination about mental or cognitive restrictions in his functional assessment and did not limit Plaintiff to unskilled work. Plaintiff thus argues that there is "no logical rationale" to support the finding that Plaintiff retains the capacity for light work but cannot perform her past relevant work.

In response, Defendant points out that there are indeed logical reasons that could hinder Plaintiff's ability to perform her past relevant work as a contact lens dispensing optician. The RFC included restrictions due to Plaintiff's loss of visual acuity and the need for a sit/stand option, both of which could hinder her ability to perform her past relevant work. Further, 20 C.F.R. § 404.1567(b) expressly provides that if someone can perform light work, they can also perform sedentary work "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Indeed, the ALJ specifically included a sit/stand option in the RFC, acknowledging Plaintiff's inability to sit for long periods of time. (Tr. 24). As such, the ALJ identified an "additional limiting factor" that could prevent Plaintiff from performing her past sedentary work even though she can perform light work.

Plaintiff also argues that the AJC's finding that Plaintiff would be off task no more than 10% of the workday in addition to regular scheduled breaks is inconsistent with the totality of the RFC. In support of this argument, Plaintiff contends that she would be off task 10.8% -23.3% of the workday to an extent that would preclude all work in the competitive

market and offers several mathematical computations regarding percentages, including the following:

> For example, a typical workday consists of eight hours, or 480 minutes. Allowing for two breaks of 15 minutes each and a lunch period of 30 minutes, the individual would be expected to be on task for the remaining 7 hours or 420 minutes. If the individual requires a shift change every thirty minutes of one minute duration during the remaining 7 hours, the person would be off task 1.66% per hour for a total of 11.6% (1.66 x 7 hours = 11.6%) A shift change of 2 minutes duration would result in the person being off task 3.33% per hour for a total of 23.3% (3.33 x 7 = 23.31) If you allow for a 60 minute lunch, the person would be off task consistently at a minimum of 10.8% for one minute shift changes (1.66 x 6.5 hours) and 21.6% for a two minute change (3.33 x 6.5).

(Doc. 16 at 5).

As Defendant accurately observes, Plaintiff's argument and the computations she sets forth are simply incorrect. The <u>percentage</u> of the total time Plaintiff would be off task due to the sit/stand option (allowing a duration of 2 minutes off task every 30 minutes to change position) would not change based on the duration of the day. Defendant explains: "[t]he math is the same no matter the length of the workday." (Doc. 17 at 13). Defendant posits that an individual expected to be on task for 6.5 hours (390 minutes) out of an 8-hour workday due to two 15-minute breaks an and an hour lunch break, changing position every 30 minutes for a duration of 2 minutes would also only put the person off task for 6.6% of the day. Defendant contends that, regardless of the length of the workday, the sit/stand option in the RFC is consistent with the finding that Plaintiff would be off task no more than 10% of the workday. The Court agrees that Plaintiff's argument on this point is flawed and unavailing.

Contrary to Plaintiff's argument, the ALJ did not err in finding that Plaintiff retains the capacity for light work.

### C. THE ALJ'S RELIANCE ON THE VOCATIONAL EXPERT TESTIMONY

Plaintiff next argues that the ALJ erred in relying on the vocational expert's testimony regarding a hypothetical question that Plaintiff contends did not include all her impairments. Plaintiff argues that, therefore, the ALJ's resulting decision is not supported by substantial evidence.

Plaintiff contends that in making the RFC determination the ALJ "did not state the total amount of time Plaintiff can stand or walk in an eight-hour day and made no mention of her capacity for sitting." (Doc. 16 at 8). Instead, the ALJ stated Plaintiff is capable of light work with a sit-stand option and other limitations. Absent citation to any authority, Plaintiff suggests that the jobs of router, collator operator, and photocopy machine operator "are likely to require standing and/or walking most, if not all, of the eight-hour workday." (Doc 16 at 8). Plaintiff contends that, absent a specific finding in the RFC regarding the total amount of time Plaintiff can walk, the Court cannot determine whether the RFC included appropriate limitations on her ability to perform basic work activities. (Doc. 16 at 8). Plaintiff also contends that the representative jobs are unlikely to be performed effectively in the competitive market with the position changes required by Plaintiff, and that the jobs require trunk strength. Plaintiff contends that Dr. Oliver and Dr. Lee opined that Plaintiff was incapable of using her abdominal and low back muscles in a manner consistent with the required trunk strength needed for the jobs.

First, it is worth noting that Plaintiff's arguments are generally based on unsupported suppositions regarding the requirements of the representative jobs. Plaintiff's argument on this point is premised on the assumption that the ALJ assigned an RFC to Plaintiff that failed to include additional limitations, such as limitations regarding trunk strength opined by Dr.

Oliver and Dr. Lee. As explained above, that argument is unavailing because the ALJ's decision and the RFC determination are based on substantial evidence.

As a review of the ALJ's decision makes clear, the ALJ did not credit the opinion of Dr. Lee, which he expressly found "minimally persuasive" because (like other medical sources in the record that the ALJ found to be minimally persuasive), Dr. Lee reviewed some of claimant's medical record, but did not directly examine the claimant. (Tr. 29, 1049). The ALJ also noted that opinions such as from Dr. Lee "appear to be heavily influenced by prior opinions also made by physicians that did not examine the claimant." (Tr. 30). The ALJ found them "not particularly useful when considering the claimant's impairments." (Tr. 30).

As for Dr. Oliver's opinion, the ALJ noted that it was inconsistent when compared to the treatment notes. (Tr. 30). The ALJ found that Dr. Oliver's opinion was also "minimally persuasive" because it failed to include an explanation of the opinion, was unsupported, was conclusory in terms of stating claimant could not return to work and appeared to be limited to capabilities in July 2018. (Tr. 28, 881). The ALJ specifically noted that Dr. Oliver's opinion about returning to work is an issue reserved for the Commissioner. The ALJ stated, "[a]t the Social Security Administration, we take into account factors such as age, education, work history, and functioning into determinations of disability and there is little indication this source did the same." (Tr. 28).

It is apparent that the ALJ's decision thoroughly considered Plaintiff's condition as a whole, and as observed above, substantial evidence supports the ALJ's findings regarding Plaintiff's RFC. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was he required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F.App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive

hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC. (Tr. 58-61). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to include findings in the hypothetical that he had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

### D    THE ALJ'S CONSIDERATION OF COMBINED EFFECT OF IMPAIRMENTS

Plaintiff next argues that the ALJ erred by failing to consider the combined effect of all Plaintiff's impairments, particularly the effect of chronic pain related to her back conditions, including lumbar degenerative disc disease with radiculopathy status post-surgery, cervical degenerative disc disease and degenerative changes to the thoracic spine. (Doc. 16 at 10). More specifically, Plaintiff contends that the ALJ failed to consider the effect of chronic pain and narcotic medications on Plaintiff's cognitive functioning and ability to sustain concentration, persistence, and pace.

In support of her argument on this issue, Plaintiff contends that the "record is replete" with objective evidence confirming Plaintiff's back impairments and Plaintiff thus suggests that the severity of the impairments can be reasonably expected to produce the alleged pain and other symptoms. (Doc. 16 at 10-11). Plaintiff's brief includes numerous cites to evidence that Plaintiff contends supports the finding that her back impairments warranted greater limitations. (Doc. 16 at 10-15). In other words, Plaintiff's argument on this issue amounts an invitation reweigh the evidence. As to the argument that the ALJ failed to consider the effect of chronic pain and narcotic medications, that argument is also unpersuasive.

The ALJ properly considered the effects of all of Plaintiff's conditions in combination, including her chronic pain and narcotic mediations. Where an ALJ properly considers all of a claimant's impairments, it is not necessary to make more specific findings regarding the combined effects of the impairments. *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (holding that more specific findings were not necessary where an ALJ explicitly stated that the medical evidence did not establish the existence or an impairment or combination of impairments that amounted to disability and the ALJ had given "exhaustive consideration" to the effect of those impairments on the RFC).

Here, the ALJ specifically stated that he had considered the record as a whole including claimant's reported activities of daily living, conservative treatment, medical records, and opinion evidence. (Tr. 30-31). Indeed, the ALJ's decision reflects his exhaustive review and discussion of the record evidence. Further, despite Plaintiff's contentions, it is apparent that the ALJ considered both Plaintiff's chronic pain and her use of narcotic medications because he included both factors in the RFC analysis. The ALJ specifically mentioned Plaintiff's chronic pain syndrome and that she had often reported a high percentage of pain relief from medication. (Tr. 26). Indeed, as discussed above, the Plaintiff frequently reported 70-90% of her pain relieved due to her medications. The ALJ also explicitly explained that Plaintiff required a sit/stand option "due to a combination of her chronic pain syndrome and multilevel degenerative disc disease and pain," and that a combination of her impairments justified additional postural, reaching, and environmental limitations. (Tr. 30). The ALJ further expressly stated, "a combination of her pain and side effects of her medication would cause some off task time." (Tr. 30).

The undersigned agrees that the ALJ properly considered the combined effects of Plaintiff's impairments, including her chronic pain and use of narcotic medications. The Court may not reweigh the evidence or usurp the ALJ's role. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that [plaintiff] points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner."). The ALJ did not err in considering Plaintiff's impairments or the combined effect of the impairments.

### E.   THE ALJ'S CONSIDERATION OF SUBJECTIVE COMPLAINTS

Finally, the Plaintiff argues that the ALJ erred by failing to articulate sufficient reasons for disregarding Plaintiff's subjective complaints. Plaintiff cites various examples of her testimony describing her pain and limitations and contends that her testimony is supported by diagnostic studies and the opinions of treating physicians and specialists. Plaintiff argues that the ALJ erred by discounting her testimony on the basis that her alleged symptoms were not consistent with the objective evidence of record. (Doc. 16 at 20).

When a claimant alleges that he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). If the ALJ determines the claimant has such a condition, the ALJ will evaluate the alleged symptoms' intensity and persistence and how they limit the claimant's ability to work. *Id*. The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). An

ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

In this case, the ALJ explicitly discussed Plaintiff's allegations regarding the severity of her symptoms and found her alleged symptoms were "not entirely consistent with the medical evidence and the other evidence in the record." (Tr. 25). This finding is indeed supported by substantial evidence, as discussed in detail above, as well as Plaintiff's activities of daily living. Indeed, the ALJ properly considered Plaintiff's activities of daily living, and specifically observed that Plaintiff had reported swimming and had frequently reported significant improvement in her symptoms with medication. (Tr. 28-29). The undersigned agrees that the ALJ conducted the correct analysis. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (stating and ALJ may consider a claimant's daily activities when evaluating subjective complaints).

Further, the ALJ cited additional reasons for discounting Plaintiff's testimony and subjective statements. The ALJ expressly noted that the treatment records reflected Plaintiff's report to Dr. Hashim that she experienced 70-80% pain relief with activities of daily living which the ALJ determined "shows she is capable of some level of activity." (Tr. 30). The ALJ also observed that the visual consultative examiner believed Plaintiff did not put forth her best efforts during the exam. (Tr. 28).

The Court agrees that the ALJ had explicit and adequate reasons to reject Plaintiff's testimony and subjective statements regarding her symptoms and limitations. *See Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ did not err when evaluating Plaintiff's testimony and subjective statements regarding her symptoms.

Based upon a review of the record, the Court finds that substantial evidence supports the ALJ's findings, the RFC determination, and the conclusion that the Plaintiff was not disabled. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE AND ENERED** in Ocala, Florida on August 12, 2022.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties